# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# CASE NO.

CAROLYN REDFORD

      Plaintiff,

v.

SPOTON TRANSACT, INC

      Defendant.         /

## COMPLAINT

Plaintiff, CAROLYN REDFORD ("Plaintiff"), by and through heris undersigned attorney, sues Defendant, SPOTON TRANSACT, INC ("Spoton"), and alleges as follows:

## INTRODUCTION

1.    This is an action for damages, declaratory, and injunctive relief by Plaintiff against Spoton for sex, age and race discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, and the Florida Civil Rights Act of 1992 ("FCRA"), and 42 U.S.C. §1981 ("§1981") as well as for retaliation under Florida's Private Whistleblower Act, Florida Statute

§§448.101.104 ("FPWA").  This action also involves this Honorable Court's

supplemental jurisdiction to cover the intentional civil theft of Plaintiff's funds, as

well as breach of contract, both written and verbal, and unjust enrichment.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C.

§1331,  42 U.S.C. §1981 and Title VII. The Court's supplemental jurisdiction is

invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

3.      Venue properly lies in this judicial district pursuant to 28 U.S.C.

§1391(b), in that the Defendant maintains offices within this judicial district,

carries on commerce with citizens of this judicial district at open places of business

located within this judicial district and Plaintiff primarily worked for Spoton within

this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

4.      Plaintiff is a sixty two (62) year old black female of Jamaican national

origin, sui juris, and, at all times material to this action, was a resident located in

part of Duval County, Florida.  Plaintiff primarily worked from an office

maintained by Spoton in her home as an Account Executive for Spoton and was

paid primarily through the receipt of wages and commissions for sales of Point of

Sale services, software and equipment.  Spoton provided computers, software and

other equipment to maintain the office in Plaintiff's home, as well as the

telecommunications software (including but not limited to Zoom and Salesforce) to link Plaintiff's home office with Spoton's national headquarters in California.

5.     Spoton  is a foreign profit company that maintains their principal headquarters in California, but also maintains an office in Plaintiff's Duval County home to engage with and solicit Florida residents and maintains a registered agent in the state of Florida in Incorporating Services, Ltd., 1540 Glenway Dr., Tallahassee FL 32301. At all times material to the complaint, Spoton maintained commercial operations within the state of Florida through the Plaintiff's Duval County location, as well as other offices located throughout the state.  The majority of the retaliation and discrimination that Plaintiff faced occurred while she was located in Duval County.

6.     Plaintiff has complied with all conditions precedent to jurisdiction under Title VII and the FCRA in that she filed her Charge of Discrimination with the Equal Employment Opportunity Commission("EEOC") and the Florida Commission on Human Relations ("FCHR") within 300 days of the unfair employment practices alleged in this Complaint; Plaintiff has filed this suit within 90 days of receiving a Right to Sue notice from the EEOC dated May 30, 2023; and Plaintiff is filing this Complaint within the FCRA's four (4) year statute of limitations for the alleged discriminatory acts. Thus, all administrative prerequisites have been satisfied and this suit is timely filed.

## GENERAL ALLEGATIONS

7.     Plaintiff started her employment with Spoton working out of her home office maintained on behalf of Spoton at some point in January 3, 2022 as an Account Executive of Point of Sale services, software and equipment.

8.     Plaintiff's primary management chain at Spoton included a male Puerto-Rican American "White Hispanic" Account Executive Team Leader George Cintron (hereinafter "George"), whom Plaintiff believed was in his forties, served as Plaintiff's direct supervisor.  Jamie Watson (hereinafter "Jamie") was a White Caucasian-American whom Plaintiff believed to be in his thirties and whom served as George's direct supervisor.  Spoton's Vice President of Sales Chris Lombardi was a White Causasian-American, whom Plaintiff believed to be in his thirties and served as the direct supervisor of "Jamie".  The other two managers in Plaintiff's region (but who were not in her direct line of supervision) were Reed Corless a White Caucasian-American whom Plaintiff perceived to be in his twenties and Angus McCulloch a White Caucasian-American whom Plaintiff perceived to be in his fifties.  Of the five member management team: all five were under sixty; all five were White; four of five were of Caucasian-American national origin with the other being White Hispanic of Puerto-Rican national origin and all five were outwardly presenting as males so it is not unfair to say it was a "five man team".

9.     Plaintiff perceived a very high imbalance of male to female employees at Spoton in her general position, possibly as high as six to one.  Due to the quick and high turnover, approximately thirty people worked for at least a short time on Plaintiff's team and of that thirty only five others were female.  Plaintiff perceived that she was the only employee in her area and out of a twelve member team over sixty.  Plaintiff perceived that she was one of two black employees on her twelve member team and the only one of Jamaican national origin.

10.    Year after year, the four top male Account Executives in the territory were provided an incentive to advance to the "Presidential Club," where they enjoy a free luxury vacation paid for by SpotOn, a six-figure income, and career advancement.  However, no one could identify to Plaintiff where a woman had received the "Presidential Club" incentive in her region while at Spoton.

11.    Because Account Executives were required to make one hundred new contacts/leads a week, at the time Plaintiff started working it was possible for them to accidentally run into leads being actively worked on by other sales members.  In an effort to protect a salesperson's leads and opportunities, the company had recently purchased Salesforce and started implementation and training of all salespeople in shortly after Plaintiff started working.   Learning and using Salesforce was an integral part of all AE's responsibilities and all of Spoton's salesforce, especially seasoned sales members who had operated before its

implementation, were were warned repeatedly that if they did not import their leads and accounts from the old system, the opportunities and accounts would NOT be protected in fairness to the new sales team members who are expected to generate sales and earn a living.  All members of the sales team were told this countless times on the many Zoom calls, Slacks, daily trainings and emails.

12.    Alongside with rolling out Salesforce, SpotOn implemented the "Rules of Engagement" or ROE, the Rules (Attachment N) which defines how leads, opportunities and accounts are protected.  The first and most salient task that a member of the sales team must complete in order to claim ownership of any account or opportunity was to create the lead, opportunity or account in Salesforce. Under Spoton's "Rules of Engagement - Page 3 - Prospecting – Section 1 – General Rules" it states that "All leads should be entered into Salesforce, and the standard lead conversion process should always be followed. This process reduces the risk of:

    • Pitching to an existing customer,

    • Contacting an account that is already in Salesforce and assigned to another AE,

    • Selling to a merchant that is not in your territory will result in you losing sales credit and commission."

13.     Spoton further detailed under its ROE that a failure to comply with the above policy would result in the older claim being nullified and the rewards for sealing the account would pass to the newer accurately completed claim.  Under Spoton's "Rules of Engagement – Page 2" in expressly states "Sales completed in violation of this policy will not be eligible to receive commission, bonus or residuals, as they are not considered "earned." The ROE later goes on to reiterate that "Employees in a sales position are required to comply with these Rules of Engagement."

14.     Sales team members were repeatedly told by management and trainers at Spoton that any new opportunities that they worked and entered correctly into Salesforce would be protected but that any entered incorrectly or not entered at all would not be protected.  This is important as more established sales members such as George had worked in the same territory for years and there are a finite number of restaurants and other potential clients to target.  So merely by contacting them once in the past and "being aware of them" would not protect their so-called lead under the Spoton ROE.  Pursuant to the ROE, the sales team member e must not only have entered the opportunities into Salesforce, but under "Taking Ownership of an Existing Prospect, #2" 'The 90 day rule only counts activities such as a Call or Events where A PROSPECT IS ACTIVELY ENGAGED AND RESPONSIVE."

15.    On February 8, 2022, Plaintiff met with several owners of local restaurants including Jesus Valencia the owner of a forty five restaurant chain called Salsas.  Plaintiff later discussed this and other leads with George.  At no point during their discussion of Jesus Valencia and Salsas did George indicate that he considered that one of his protected leads and in fact encouraged her to pursue the potential client.  Plaintiff checked Salesforce as she was trained to do and found no evidence that George or any other sales team member had entered either Jesus Valencia or Salsas restaurants as protected leads or opportunities.

16.    At some point later, Plaintiff had conversation with both George and Jamie where amongst the potential clients she was approaching, she identified she would be having further calls with Jesus Valencia and Salsas.  Neither George no Jamie indicated that this was a protected lead or opportunity and encouraged her to pursue the matter.

17.    A short time later, Plaintiff walked into the Salsas restaurant on Hodges Boulevard in Jacksonville FL and spoke directly with Jesus Valencia's son Carlos.  Carlos informed the Plaintiff that his father was immediately looking to switch Point of Service providers, that they owned a large chain of restaurants, forty-five and growing, and he directed Plaintiff to contact his father immediately. Carlos gave Plaintiff his father's private cell phone number, his email address, and even gave me his mother's name, Blanca to contact as a backup. Before leaving the

restaurant, the Plaintiff asked Carlos what the primary location of Salsas was, as she knew that this was critical information for claiming ownership to Jesus's entire chain as Spoton's ROE on Page 4 state under Multi-location groups/franchises – "The general rule for groups of merchants is that account/territory ownership is based on the owner (AE) of the corporate office. If an AE owns the corporate office, that AE owns all locations by default. The AE should ensure that a Parent Account is created for the HQ in Salesforce, and any locations are linked underneath. In cases where there is no corporate office, it is based on the primary location of the decision maker for the group." After asking Carlos what the primary location was for his father's chain, Carlos told Plaintiff that it was the Hodges Boulevard location and that is why he worked at that location.

18.    Plaintiff immediately to her car and called Jesus Valencia. Jesus Valencia immediately picked up the phone and Plaintiff told him about her conversation with his son and that she wanted to meet with him to learn more about his needs for his restaurant chain and to introduce him to Spoton.  During their conversations, Jesus Valencia confirmed to Plaintiff that he was in the decision-making process of selecting a new POS provider for his chain. To pique Jesus's interest, Plaintiff spoke about Spoton's unique capabilities, and Jesus showed great interest and asked Plaintiff to send him the link of Spoton Restaurant POS website.  Plaintiff later texted Jesus the link immediately upon ending the call.

They then discussed and agreed that they would connect again a few days later.  As they had discussed the Spoton POS services in detail, Plaintiff provided him detailed information and they agreed to scheduled followups, at this point Salsas and Jesus Valencia became an "opportunity" for Plaintiff under Spotons ROE which she reported/logged correctly into Salesforce.  At no time during any of Plaintiff's exchanges with Jesus did he mention George or knowing anything about Spoton.

19.    Under the ROE on Page under Prospecting it states… "If there is no activity for 90 days in Salesforce, and there is no future close date in Pipeline, then that prospect is available to take over and pursue." Plaintiff checked both Salesforce and Pipeline and there was no information whatsoever on Salsas or Jesus Valencia, in either portal, so for a protected ninety days, Plaintiff was free to pursue Jesus and Salsa for his businesses as she proceeded to correctly enter the required information to protect her opportunity.

20.    Even if Plaintiff entered information incorrectly, it was Jamie's responsibility to train new Account Executives like her and to demonstrate how to enter the opportunity properly.

21.    Only a few days after Plaintiff's last exchange with Jesus, on February 17, 2022, George announced via the morning Zoom call that he had a large opportunity because he was working Salsas and had a lead.  Plaintiff was shocked

to hear that and immediately pinged Jamie on Slack.  Jamie eventually responded the Salsas account was George's and that "…George had Salsa in Salesforce and has been working it for 2 years. He has the opportunity/lead under the owner's name Jesus Valencia as a parent account."  Jamie stated that the lead/opportunity was created in Salesforce, despite the fact that when she researched the lead on Salesforce it did not exist.  After Jamie disclosed this fact, Plaintiff looked at Salesforce again and saw that someone had created a backdated lead for George.  However, there is a clear distinction in the ROE between a lead and an opportunity and leads are not protected.  It was very clear to Plaintiff that Jamie and George were conspiring to steal her opportunity as it would potentially generate over a million dollars in commission over a year period.

22.    Later during the day that, Plaintiff questioned Jamie about George's claim to Salsas and he pulled George into a three-way call with me where they discussed the opportunity.  Jamie reiterated that he had "seen proof" that the opportunity belonged to George even though he did not provide what details consisted of that "proof".  They both praised Plaintiff's initiative and said that they saw her going to Vegas as part of the Presidential Club to which Plaintiff responded "I won't make it to Vegas if George keeps taking my Salsas".  George then said that he would split commissions on the restaurants that she would be duly compensated for bringing Salsas to Spoton.

23.     On or March 14, 2022, George got on Slack, bragging in a video that he had closed Salsas and that Jesus was particularly swayed by the SpotOn Assist program (the program Plaintiff brought to his attention via text in an effort to entice him to join Spoton.   Plaintiff was surprised because George did not mention her role in bringing Salsas to Spoton, nor did he ever talk to me at all about working Salsas even though he was still my team leader and had agreed to include me in on the commissions. Plaintiff communicated via Slacked to congratulate him and asked how and when she would be compensated and told him that I was expecting deals for the month to which George became unhinged and told Plaintiff that she was trying to "steal" his account and that she was owed nothing. Plaintiff immediately Slacked and asked Jamie to hop on a telephone call to ask for proof that George had indeed done all the work that they both claimed he did prior to her communications with Jesus and his son.  Jamie then told Plaintiff on the phone that she was not entitled to see any communication between George and Jesus.  Jamie followed up this call by sending a Slack message stating "George sent me proof of him speaking with the owner of Salsas, emails, texts and bdr appointments. We won't be offering you a split on this deal. He has worked 2+ years on this account and bluntly that wouldn't be fair to him…" This confused Plaintiff because she thought "If George had that proof, why would he agree a two-way split when he

could legally claim ownership.  Why not show the proof to her and put her

complaints to rest."

24.     On March 16, 2022, Plaintiff sent a Slack communication requesting

again to see the proof that George had been working the opportunity and was

legally entitled to ownership of the commissions.  Jamie arrogantly refused and

stated "She was not entitled to see anything." Jamie refused to listen to anything

Plaintiff had to say, raised his voice in an intimidating tone, almost shouting at full

volume to bully her into being quiet.  Plaintiff spoke several times after that

conversation with Jamie used the opportunities to ask for proof of George's work

on Salsas. Each time Plaintiff asked, Jamie became rude, and told her that he had

spoken to Chris Lombardi, Vice President of Sales and that as far as he and Chris

were concerned, I had no entitlement to the Salsas account.  Jamie further stated

that Chris was upset with Plaintiff for "causing division on the team," and that Chis

was "very unhappy with me,".  Jamie told her that she should drop the matter and

warned her against going to HR (Human Resources).  Jamie further told her that

Spoton may not be the place for her, to which she asked if she was being

terminated and he said no.

25.     Despite this, Plaintiff continued to plead her case with Jamie as she

had proof of her own text exchanges with Jesus that he was unfamiliar with Spoton

prior to her engagement and pointing out pointing out certain language in the ROE

that would direct that the opportunity was hers, namely "the AE must be engaged and the owner must be responsive" all of which Jamie completely shut down and dismissed and she was told to "drop the matter and move on." Jamie refused to hear anything Plaintiff had to say on the matter and bullied and intimidated her again.  Jamie told Plaintiff that he and Chris were all on George's side and that George is an exemplary and trustworthy employee.

26.     Despite Jamie's assertion, George had confessed to Plaintiff that he regularly forged customers' signatures on Spoton documents and told her that Jamie approved of the practice.  George reiterated this when he had ordered Plaintiff to falsify a signature on a previous customer's Express Financing Addendum which she refused to do. George had even confessed to Tela Hewitt, a female employee who started the same date as Plaintiff, that he has had to do "sketchy things to get ahead at Spoton."

27.     Plaintiff filed a formal dispute with HR on March 17, 2022. During the review of her complaint where she detailed the theft of her earned commissions, she was assigned no "points" for her sales from Salsas.   As a result of fabricating her failure to document appropriate sales by reducing her sales from Salsas to zero, Plaintiff was terminated July 21, 2022.

28     Plaintiff has satisfied all conditions precedent to bringing this action or these conditions have been waived or otherwise excused.

29.     Plaintiff has retained the undersigned attorney to represent him in this action and is obligated to pay said attorney a reasonable fee for his services. Plaintiff requests said attorneys' fees as damages in this lawsuit.

## COUNT I: VIOLATION OF FCRA (RACE, AGE, NATIONAL ORIGIN AND SEX DISCRIMINATION)

30.     This is an action for discrimination based upon national origin under the FCRA.

31.     Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

32.      Defendant violated the FCRA by discriminating against Plaintiff based upon her race, age, national origin, and sex by treating her differently than white male sales members from America who were under 60 years of age by conspiring to steal her earned commissions and retaliating against her by firing her when she challenged her white male managers from America who were under 60.

33. As a result of Defendant's violations of the FCRA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, CAROLYN REDFORD, prays that this Court will:

a. Order Defendant, SPOTON TRANSACT, INC, to remedy the national origin discrimination of Plaintiff by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

## COUNT II: VIOLATION OF TITLE VII (RACE, AGE, NATIONAL ORIGIN AND SEX DISCRIMINATION)

34.    This is an action for discrimination based upon race and sex under Title VII.

35.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

36.     Defendant violated Title VII by discriminating against Plaintiff based upon her race, age, national origin, and sex by treating her differently than white male sales members from America who were under 60 years of age by conspiring to steal her earned commissions and retaliating against her by firing her when she challenged her white male managers from America who were under 60.

37.     Defendant's discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with his employment with Spoton that employees outside her national origin, age, sex and race were allowed to enjoy.

38.     As a result of Defendants' violations of Title VII, Plaintiff has been damaged.

WHEREFORE, Plaintiff, CAROLYN REDFORD, prays that this Court will:

a. Order Defendants, SPOTON TRANSACT, INC, to remedy the national origin discrimination of Plaintiff by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

**COUNT III: VIOLATION OF §1981 (RACE AND GENDER)**

39.    This is an action for discrimination based upon race/national origin under 42 U.S.C. §1981. Defendant deprived Plaintiff of her rights of equal protection of the law against discrimination on the basis of race.

40.    Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

41.    Defendant violated §1981 by intentionally and purposefully treating Plaintiff differently in the terms and conditions of his employment because of her race, including but not limited to, by conspiring to steal her earned commissions and retaliating against her by firing her when she challenged her white male managers.

42.    Defendant's discriminatory actions had the purpose and effect of denying the Plaintiff rights in connection with his employment with Spoton that employees outside her race were allowed to enjoy.

43.    As a result of Defendant's violations of §1981, Plaintiff has been damaged.

WHEREFORE, Plaintiff, CAROLYN REDFORD, prays that this Court will:

a. Order Defendant, SPOTON TRANSACT, INC, to remedy the race discrimination of Plaintiff by:

i. Paying appropriate back pay;

ii. Paying prejudgment and post-judgment interest;

iii. Paying front pay in lieu of reinstatement;

iv. Paying for lost benefits including medical insurance, pension and retirement plan;

v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 760.11(5), Florida Statutes.

## <u>COUNT IV: VIOLATION OF FLORIDA'S PRIVATE WHISTLEBLOWER'S ACT</u>

44.     Plaintiff reasserts the general allegations as set forth above in paragraphs 1-29 and incorporates these allegations herein by this reference.

45.     Florida Statute §448.102 (3) prohibits an employer from taking a retaliatory personnel action against an employee because the employee has "Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Defendants continued to retaliate against Plaintiff when she repeatedly refused to submit fraudulent customer signatures or submit to the theft of her earned commissions.

46.     Plaintiff's statutorily protected conduct under the FWPA was casually connected to Defendants decision to terminate Plaintiff.  Rather than investigate

Plaintiff's claims they immediately terminated her which is in stark violation of the FWPA.

47.    As a result of Defendants' violation of the FWPA, Plaintiff has been damaged.

WHEREFORE, Plaintiff, CAROLYN REDFORD, prays that this Court will:

a Order Defendants, SPOTON TRANSACT, INC to remedy the violation of the FWPA by:

    i. Paying appropriate back pay;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 448.104, Florida Statutes.

**COUNT V: BREACH OF WRITTEN EMPLOYMENT CONTRACT**

48.    Plaintiff re-alleges the allegations contained in paragraphs 1-29 above.

49.     Plaintiff and Defendant entered into a written agreement as described for his work.

50.     Pursuant to the parties' agreement Defendant agreed to compensate the Plaintiff at the terms specified above.

51.     An essential term of the written agreement was that Defendants would pay Plaintiff according to the terms of said agreement.

52.     Defendants have willfully failed to pay Plaintiff for worked previously performed by stealing the Salsas client from her and providing it to her white manager.  Prior to the commission of Discovery, a reasonable estimate of this loss is $500,000.00.

53.     Plaintiff has been damaged due to Defendant willful failure to pay Plaintiff the appropriate agreed upon commissions.

54.     Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of the action and a reasonable attorney's fee.

WHEREFORE, Plaintiff requests judgment against the Defendants for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as the court may deem proper.


**COUNT VI: BREACH OF ORAL EMPLOYMENT CONTRACT**

55.     Plaintiff re-alleges the allegations contained in paragraphs 1-29 above. This count is alleged in the alternative to Counts V and VII.

56.     Pursuant to the parties' agreement Defendant agreed to compensate the Plaintiff at the terms specified above.

57.     An essential term of the written agreement was that Defendants would pay Plaintiff according to the terms of said agreement.

58.     Defendants have willfully failed to pay Plaintiff for worked previously performed by stealing the Salsas client from her and providing it to her white manager.  Prior to the commission of Discovery, a reasonable estimate of this loss is $500,000.00.

59.     Plaintiff has been damaged due to Defendant willful failure to pay Plaintiff the appropriate agreed upon commissions.

60.     Pursuant to § 448.08, Florida Statutes, Plaintiff is entitled to costs of the action and a reasonable attorney's fee.

61.     An essential term of the oral agreement was that Defendant would pay Plaintiff according to the terms of said agreement.

WHEREFORE, Plaintiff requests judgment against Spoton for damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as the court may deem proper.

## **COUNT VII – UNJUST ENRICHMENT**

62.     Plaintiff re-alleges the allegations contained in paragraphs 1-29 above. This count is alleged in the alternative to Counts VI and VII.

63.     As an alternative pleading to the allegations in Counts I and II, Plaintiff gave Defendant benefits in the form of millions of dollars in potential POS service contracts, but was not compensated fully for her services.

64.     Defendant has knowingly accepted these services from Plaintiff and never objected to the receipt of the same.

65.     Plaintiff objected to the purloinment of her earned commissions and issued a Demand Letter to Defendant requiring the production of her earned commissions.

66.     The circumstances are such that it would be inequitable for Defendant to retain the benefits of Plaintiff's work without paying the value to her.  This inequity is further imbalanced by the fraudulent and deceptive practices utilized by Defendant to procure this unjust enrichment for their benefit.  It is clear that it was not Plaintiff's intent to provide a gift of her labor to Defendant.

67.     Plaintiff has been damaged due to Defendant's willful failure to pay Plaintiff for all of her services. Defendant has willfully failed to pay Plaintiff for worked previously performed. Prior to the commission of Discovery, a reasonable estimate of this loss is five hundred thousand dollars ($500,00.00).

WHEREFORE, Plaintiff, CAROLYN REDFORD, prays that this Court will:

a. Order Defendant, SPOTON TRANSACT, INC to remedy the unjust enrichment by:

    i. Paying appropriate back pay including full reimbursement of the purloined commission;

    ii. Paying prejudgment and post-judgment interest;

    iii. Paying front pay in lieu of reinstatement;

    iv. Paying for lost benefits including medical insurance, pension and retirement plan;

    v. Providing any other relief that is appropriate.

b. Enter an order against Defendant for compensatory damages;

c. Enter an order against Defendant for punitive damages;

d. Grant Plaintiff costs and a reasonable award of attorney's fees pursuant to Section 448.104, Florida Statutes.


**COUNT VIII: CIVIL THEFT**

68.     Plaintiff re-alleges the allegations contained in paragraphs 1-29 above.

69.     Plaintiff submitted a written notice to Defendant's ownership, clearly and expressly stating the civil theft that was occurring to Plaintiff's earned commissions.  This demand notice was submitted more than 30 days prior to the commission of the trial.

70.     Defendant continues to abscond and hold Plaintiff's earned commissions.  These funds were stolen by Defendant in part for the benefit of its management team.

71.     Plaintiff has been damaged due to Defendant's willful failure to pay Plaintiff for all of her services.  Prior to the commission of Discovery, a reasonable estimate of this loss is five hundred thousand dollars ($500,00.00).

72.     Defendant is hereby notified more than 30 days before trial that Plaintiff will be seeking treble damages as well as prejudgment interest, together with the costs of suit and reasonable attorney fees.  The continued failure to abide by the demand letter and this notice provides express evidence of Defendant's intent to knowingly and with felonious intent commit civil theft by absconding with money rightfully belonging to Plaintiff.

WHEREFORE, Plaintiff requests judgment against Spoton for treble damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as the court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff, CAROLYN REDFORD, hereby demands trial by jury on all claims triable by right of jury under state or federal law.

Dated this 28th day of August, 2023

Respectfully submitted,

*Warren J. Pearson, JD*

Warren James Pearson, JD
3562 Four Oaks Blvd
Tallahassee FL 32311
Independent Co-Counsel with Marble Law
Counsel for Plaintiff
Telephone: (850) 567-6164
E-mail: warpear@gmail.com
Florida Bar No.: 0711578